IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>SANTANA SERRANO-VARGAS,<br><br>Defendant. | Case No. CR13-0086<br><br>ORDER FOR PRETRIAL DETENTION |

On the 13th day of November, 2013, this matter came on for hearing on the Government's request to have the Defendant detained prior to trial.[1] The Government was represented by Assistant United States Attorney Daniel C. Tvedt. The Defendant appeared personally and was represented by her attorney, Max S. Wolson.

## I. RELEVANT FACTS AND PROCEEDINGS

On November 5, 2013, Defendant Santana Serrano-Vargas was charged by Indictment (docket number 2) with illegal re-entry into the United States. At the arraignment on November 7, Defendant entered a plea of not guilty and trial was scheduled before Chief Judge Linda R. Reade on January 6, 2014.

Michael Hindman, a deportation officer with Immigration and Customs Enforcement ("ICE"), testified that in October 2013, Defendant was arrested and charged in state court with "operating under suspension and no driver's license." According to Hindman, Defendant was convicted of the offense and fined. After she was released from

---

[1] The Government requested Defendant's detention at her initial appearance before the Court on November 7, 2013. Defendant waived her right to a hearing at that time, but reserved the right to request a hearing on a later date. On November 12, Defendant asked for a detention hearing, which was then scheduled on November 13.

the Linn County Jail, Defendant was taken into custody by ICE authorities for illegally re-entering the United States.

Officer Hindman testified that Defendant is a citizen of Mexico. On August 21, 2007, she attempted to enter the United States at El Paso, Texas. Defendant presented a Texas birth certificate with the name "Victoria Cervantes." Border officials believed that it was a false document. When confronted, Defendant admitted that she had purchased it at a bus station in Ciudad Juárez. Defendant was returned to Mexico the same day pursuant to a removal order, with a five-year bar on her return to the United States.

Eight days later, on August 29, 2007, Defendant again attempted to enter the United States at El Paso. Defendant presented a false Texas birth certificate and a false identification card, bearing the name "Santana Serrano-Vargas." According to Officer Hindman, the original removal order was "reinstated," Defendant was returned to Mexico the same day, and she was barred from returning to the United States for 20 years. Authorities declined to prosecute Defendant at that time because she claimed she was three months pregnant.

It is believed that Defendant returned to the United States as early as 2008. Officer Hindman testified that he examined identification cards in Defendant's possession which were dated about that time, and could not have been obtained unless Defendant was in the United States. When Defendant was interviewed by the pretrial services officer following her arrest in the instant action, she stated that she had been in the community for approximately six years. This would be consistent with her return to the United States in 2007 or 2008.

Defendant is 28 years old. Her parents and five brothers all reside in Guerrero, Mexico. Defendant did not identify any family living in the United States. Defendant told the pretrial services officer that she has never been married and has no children.

For the past three years, Defendant has lived in an apartment on Wiley Boulevard in Cedar Rapids. Defendant advised the pretrial services officer, however, that because of her arrest in the instant action "that residence is no longer available." Defendant told the pretrial services officer that if released, she intended to reside with Manuel Barroso, whom she described as a "distant relative." (At the time of hearing, Barroso was described as Defendant's "godfather.") When interviewed by the pretrial services officer, however, Defendant was unable to provide Barroso's address or telephone number. Defendant later provided a telephone number which was out of service. Mr. Wolson advised the Court at the hearing that he had contacted Mr. Barroso shortly before the hearing and confirmed that Defendant could live there if released.

When booked into jail following her arrest in October on traffic charges, Defendant stated that she worked for a roofing company, which Officer Hindman believed was called Joseph and Sons. Defendant told the pretrial services officer that she has been employed as an assistant laborer by Joseph Juniors, a roofing company in Cedar Rapids, for the previous four years. The employment is seasonal, however, and she is currently unemployed. Because of her status, Defendant is not permitted to lawfully work in the United States.

Defendant is in good health and has no history of mental or emotional health concerns. Defendant admitted that her alcohol consumption had been problematic in the past, but told the pretrial services officer that she has not consumed alcohol in the past two years. According to the pretrial services report, Defendant was charged with operating a motor vehicle while intoxicated in Johnson County on November 6, 2011, and was sentenced to two days in jail on March 12, 2012.

Officer Hindman also testified regarding Defendant's immigration status. According to Hindman, the prior removal order has been reinstated, and if Defendant is returned to ICE custody she would be removed from the United States without further

action by the Immigration Court. Hindman opined that "in all likelihood, it would probably happen within a couple of weeks."

## II. DISCUSSION

If the government moves to have a defendant detained prior to trial, the court must undertake a two-step inquiry. *United States v. Friedman*, 837 F.2d 48, 49 (2d Cir. 1988). The Court must first determine that pretrial detention is authorized because the case falls within one of the seven enumerated circumstances found in 18 U.S.C. § 3142(f). Here, the Government asserts that the case involves a serious risk that Defendant will flee, thereby authorizing detention pursuant to § 3142(f)(2)(A). The second step requires a finding by the judicial officer that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person in the community." 18 U.S.C. § 3142(e)(1). A finding that no condition or combination of conditions will reasonably assure the defendant's appearance must only be established by a preponderance of the evidence. *United States v. Orta*, 760 F.2d 887, 891 (8th Cir. 1985). The factors which the Court must consider are set forth in § 3142(g).

The Court must first consider the nature and circumstances of the offense charged. Here, Defendant is charged with a nonviolent offense. The Government does not assert that Defendant constitutes any danger to the community. The Court must also consider the weight of the evidence. The Court believes the weight of the evidence against Defendant is strong. Defendant was caught twice trying to enter the United States with false documents. Officer Hindman testified that Defendant was ordered removed and barred from re-entry. There is no evidence that Defendant ever received official permission to re-enter the United States. It appears likely that the Government will be able to prove beyond a reasonable doubt that Defendant re-entered the United States illegally.

The Court is also required to consider the history and characteristics of the Defendant. Defendant is 28 years old and in good health. While she has apparently lived

in this community for six years, there was no evidence of strong community ties. Defendant is single and has no children. Her parents and five brothers live in Mexico. She is currently unemployed and cannot lawfully work in the United States. She recently lost her residence and intends to reside with her "godfather" if released, but could not provide his telephone number or address.

After considering all of the facts and circumstances, the Court concludes that the Government has proved by a preponderance of the evidence that no condition or combination of conditions will reasonably assure Defendant's appearance as required. Because Defendant has no job, no stable residence, and no strong ties to this community, there is nothing to prevent her from simply leaving and starting over somewhere else. Defendant argues that the short prison term which is expected in this case does not provide a strong incentive to flee. That may be true. Defendant is now facing almost certain deportation, however, and that provides an incentive not to appear for further proceedings. Accordingly, the Court finds Defendant should be detained pending trial.

The Government argues alternatively that Defendant's release would not "reasonably assure the appearance of the person as required" because she is subject to removal from the country by ICE. That is, if the Court ordered Defendant released, she would go back into ICE custody. The Government asserts that absent further action, she would then be removed from the country and unavailable for prosecution. Defendant filed a detailed brief arguing that the existence of an ICE detainer or order for removal is not a valid basis for detention under § 3142(e). Because the Court has concluded that no condition or combination of conditions will reasonably assure Defendant's appearance as required *independent* of any action by ICE to remove Defendant, it is unnecessary to consider the alternative argument.

## III. ORDER

IT IS THEREFORE ORDERED as follows:

1. The Defendant is committed to the custody of the Attorney General for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal.

2. The Defendant shall be afforded reasonable opportunity for private consultation with counsel.

3. On order of a Court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility in which the Defendant is confined shall deliver the Defendant to the United States Marshal for the purpose of an appearance in connection with a court proceeding.

4. Defendant is advised that she has the right to seek a review of the Detention Order by filing a motion for revocation or amendment of the order with the district court, pursuant to 18 U.S.C. § 3145(b).

5. The time from the Defendant's oral motion for detention hearing (November 12, 2013) to the filing of this Ruling (November 14, 2013) shall be excluded in computing the time within which the trial must commence pursuant to the Speedy Trial Act. 18 U.S.C. § 3161(h)(1)(D).

DATED this 14th day of November, 2013.

_____
JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA